**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

|  |  |  |
|---|---|---|
| JASON HALASA, | ) | Civil Action No. |
|  | ) | 1:10-cv-0437 [WTL-MJD] |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| ITT EDUCATIONAL SERVICES, INC., | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |
|  | ) |  |

**DEFENDANT ITT EDUCATIONAL SERVICES, INC.'S REPLY BRIEF**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR IN THE**
**<u>ALTERNATIVE FOR SUMMARY ADJUDICATION OF THE ISSUES</u>**

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................... 1

II.     HALASA FAILED TO PROVIDE ADMISSIBLE EVIDENCE
        DEMONSTRATING THAT ANY FACTS ARE IN DISPUTE ..................................... 2

III.    HALASA HAS NOT MET HIS BURDEN TO SAVE HIS RETALIATION
        CLAIMS ........................................................................................................ 4

        A.    Halasa Cannot Establish Protected Activity Because He Did Not Have A
              Reasonable, Good Faith Belief That ITT Was Actually Submitting False
              Claims To The Government Such That He Could Have Filed A FCA
              Lawsuit That Met The Rule 11 Standard............................................... 4

        B.    Halasa Fails To Offer Any Evidence That The Decision-Makers Knew
              About His Alleged Complaints............................................................ 10

        C.    Halasa's Characterization Of His Role As "Merely At The Top Of The
              Reporting Pyramid" Is Not Sufficient To Overcome The Overwhelming,
              Undisputed Evidence That He Was A Fraud Alert Employee ..................... 12

        D.    Halasa Fails To Offer Evidence Sufficient To Establish Pretext ..................... 14

IV.     THE CALIFORNIA RETALIATION CLAIM FAILS  FOR THE SAME
        REASONS ...................................................................................................... 17

V.      HALASA'S PERSONAL VIEW ABOUT WHAT IS A TERMINABLE
        OFFENSE FAILS TO ESTABLISH A TRIABLE ISSUE OF FACT AS TO THE
        AFTER-ACQUIRED EVIDENCE DOCTRINE ......................................................... 17

VI.     CONCLUSION................................................................................................ 19

# TABLE OF AUTHORITIES

Page

## Cases

*Abner v. Jewish Hosp. Health Care Services*,
No. 4:05-cv-106-RLY-WGH, 2010 WL 1381816 (S.D. Ind. Mar. 31, 2010) ..................... 10, 11

*Anderson v. Graybar Elec. Co., Inc.*,
No. 09-251 (MJD/FLN), 2010 WL 2545508 (D. Minn. June 18, 2010).................................. 14

*Balmer v. HCA, Inc.*,
423 F.3d 606 (6th Cir. 2005) ................................................................................................... 15

*Bank of Illinois v. Allied Signal Safety Restraint Sys.*,
75 F.3d 1162 (7th Cir. 1996) ............................................................................................... 3, 18

*Boze v. General Elec. Co.*,
No. 4:07CV-74-M, 2009 WL 2485394 (W.D. Ky. Aug. 11, 2009) .......................................... 15

*Brandon v. Anesthesia & Pain Mgmt. Assoc., Ltd.*,
277 F.3d 936 (7th Cir. 2002) ........................................................................................... 12, 13

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ......................................................................................................... 1, 14

*Clark v. America's Favorite Chicken Co.*,
110 F.3d 295 (5th Cir. 1997) ..................................................................................................... 3

*Covert v. Monroe County Dept. of Job and Family Services*,
No. 2:08-CV-744, 2010 WL 2346550 (S.D. Ohio, June 8, 2010) ........................................... 16

*E.E.O.C. v. Memphis Goodwill Indus. Inc.*,
675 F. Supp. 2d 846 (W.D. Tenn. 2009) ................................................................................. 16

*Erickson v. Uintah Special Services Dist.*,
268 Fed. Appx. 714, 2008 WL 634979 (10th Cir. Mar. 6, 2008) ........................................... 14

*Fanslow v. Chicago Mfg. Center*,
384 F.3d 469 (7th Cir. 2004) ..................................................................................................... 5

*Hasan v. Dept. of Labor*,
400 F.3d 1001 (7th Cir. 2005) ................................................................................................. 14

*Hollins v. Atlantic Co., Inc.*,
188 F.3d 652 (6th Cir. 1999) ................................................................................................... 16

*Ineichen v. Ameritech*,
   410 F.3d 956 (7th Cir. 2005) .................................................................. 3

*Kakeh v. United Planning Org., Inc.*,
   655 F. Supp. 2d 107 (DC Cir. 2009) ..................................................... 14

*LaFary v. Rogers Group, Inc.*,
   591 F.3d 903 (7th Cir. 2010) ............................................................ 3, 18

*Lang v. Northwestern University*,
   472 F.3d 493 (7th Cir. 2006) ............................................................. 5, 7

*Luckey v. Baxter Healthcare Corp.*,
   183 F.3d 730 (7th Cir. 1999) ................................................................ 10

*Mullhall v. Ashcroft*,
   287 F.3d 543 ( 6th Cir. 2002) ......................................................... 10, 11

*Neal v. Honeywell Inc.*,
   33 F.3d 860 (7th Cir. 1994) ................................................................ 1, 7

*Parato v. Unadilla Health Care Center, Inc.*,
   -- F. Supp. 2d ----, 2011 WL 1196067 (M.D. Ga Mar. 28, 2011) ......... 14

*Ramseyer v. Century Healthcare Corp.*,
   90 F.3d 1514 (10th Cir. 1996) .................................................... 10, 12, 13

*Scott v. Metropolitan Health Corp.*,
   234 Fed. Appx. 341, 2007 WL 1028853 (6th Cir. April 3, 2007)........ 14, 15

*Stone v. City of Indianapolis Public Utilities Division*,
   281 F.3d 640 (7th Cir. 2002) ............................................................... 14

*Turner v. Anheuser- Busch, Inc.*,
   7 Cal. 4th 1238 (1994) ..................................................................... 8, 18

*Turner v. DynMcDermott Petroleum Operations Co.*,
   No. 06-1455, 2010 WL 4363403 (E.D. La. Oct. 21, 2010)..................... 14

*U.S. ex rel. Lamers v. City of Green Bay*,
   168 F.3d 1013 (7th Cir. 1999) ................................................................ 8

*United States ex rel. Marlar v. BWXT Y-12, L.L.C.*,
   525 F.3d 439 (6th Cir. 2008) ............................................................... 8, 9

*US ex rel. Erickson v. Uintah Special Services Dist.*,
   No. 2:02CV581DAK, 2007 WL 81806 (D. Utah Jan. 8, 2007) ............... 15

## Statutes

20 U.S.C. § 1094(a)(20) ............................................................................. 9

31 U.S.C. § 3730(h) .................................................................................. 18

42 U.S.C. § 2000e-2(m) ............................................................................ 17

# I.
## INTRODUCTION

The Opposition is largely rhetoric, rumors, speculation, and argument without evidentiary support or details.  If the non-moving party fails to offer specific, admissible evidence sufficient to establish a triable issue of fact with respect to any element of his claim, summary judgment must be granted.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  Halasa failed to offer evidence sufficient to establish a triable issue of fact as to all of the following essential elements of his claims (although summary judgment must be granted if the Court finds that Halasa failed to meet his burden with respect to any <u>one</u> element):

<u>No Protected Activity</u>:  Halasa failed to establish that his alleged reports were protected activity under the False Claims Act ("FCA"), which requires a good faith, reasonable belief that could support the filing of a FCA action consistent with Rule 11.  *Neal v. Honeywell Inc.*, 33 F.3d 860, 864 (7th Cir. 1994).  Reporting speculation is not protected activity, yet Halasa simply accepted the rumors and office gossip that define his case as true, without any effort to verify the information or develop any basis on which to have a reasonable belief that a FCA violation had actually occurred.  His "information" was also too vague to support a reasonable belief.  Even now he lacks evidence to file a FCA action consistent with Rule 11-- Halasa cannot name a single student whose grades, attendance, placement test, or graduate employment information was allegedly falsified.  Regardless, at best, his alleged complaints relate to potential violations of ITT policy, which are not protected under the FCA.  For all these reasons, he lacked any reasonable basis to believe that ITT had submitted false claims for payment to the government.

<u>Knowledge by the Decision-Makers</u>:  Halasa's failure to offer proof that the decision-makers knew about his alleged complaints is fatal to his claim.  Courts have rejected as improper speculation the notion that one can assume non-decision-makers told the decision-makers.

<u>Fraud Alert Employee/Heightened Notice</u>:  Halasa's conclusory statement that he was merely "at the top of the reporting pyramid" does not establish a triable issue of fact and it is refuted by uncontroverted evidence that conclusively demonstrates his status as a "fraud alert employee."  Dispelling any question about this fact is Halasa's own admission under oath that part of his job included monitoring and investigating fraud.  He admits he never told ITT that he planned to file a lawsuit or report ITT to the government.  Therefore, it is undisputed that he does not meet the heightened notice requirement.

<u>Pretext/Causation</u>:  Summary judgment must be entered and the Court need never reach the issue of pretext in light of Halasa's failure to establish a *prima facie* case.  Even if the Court were to reach pretext, he has not met his burden to defeat summary judgment, which required that Halasa provide evidence that his termination was so baseless and implausible so as not to be credible.  Most of the underlying incidents are not in dispute and Halasa does not dispute that lack of leadership and judgment warrants remedial action.  Halasa's personal belief that the incidents were trivial and that it would have been more fair or appropriate to give him a warning do not establish pretext.  The question is not whether ITT made a fair or sound decision, but whether ITT acted with retaliatory motive.

## II.
## HALASA FAILED TO PROVIDE ADMISSIBLE EVIDENCE DEMONSTRATING THAT ANY FACTS ARE IN DISPUTE

Halasa failed to establish that any material facts are in dispute.[1]  While Halasa makes conclusory statements that certain facts either contain "half-truths" or are disputed, for the most part, he fails to say why or offer contrary evidence.  It is not sufficient to state merely that a fact

---

[1]  Halasa admits that Fact Nos. 3, 4, 5, 6, 7, 10, 13, 16, 22, 37, 43, 44, 46, 47, 52, 53, 58, 60, 62, 69, 70, 74, 75, and 77 are undisputed and that he has insufficient information to admit or deny Fact Nos. 8, 32, 67, and 68.

is disputed. Argument cannot defeat summary judgment—only evidence can do this. *Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997) ("Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment.").

Another reason that the Opposition fails to create a triable issue of fact is that it contains assertions that flatly contradict his sworn deposition testimony.[2] *See, e.g.*, *Bank of Illinois v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168-69 (7th Cir. 1996) ("We have long followed the rule that parties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions. If such contradictions were permitted . . . 'the very purpose of the summary judgment motion—to weed out unfounded claims, specious denials, and sham defenses—would be severely undercut.'"); *see also LaFary v. Rogers Group, Inc.*, 591 F.3d 903, 908 (7th Cir. 2010); *Ineichen v. Ameritech,* 410 F.3d 956, 963 (7th Cir. 2005). The Opposition further fails because it relies largely on objectionable, inadmissible evidence[3] and gross mischaracterizations of the deposition testimony and other evidence. In short, he evidence simply does not say what he claims it says.[4]

---

[2] For example, in his Opposition, Halasa states, "Several recruiters, including John Thompson, Dean Harris, and Robert Roberts complained to Halasa that representatives were being compensated illegally based on the number of students they convinced to enroll at ITT." Opp. at 5, 11. However, Halasa admitted at his deposition that no one said that to him. His alleged belief was based solely on his experience and personal observations, and the only people with whom he discussed his alleged concerns were Valory Hemphill and Jeff Ortega. Halasa Dep. 130:11-131:14. Halasa also characterizes Fact Nos. 1, 2, 11, 17, 20, 28, 36, 39, 40, 45, 48, 49, 50, 54-57, 63, 66, 71, 72, 76, 78, 80, and 82 as a half-truths or disputed, yet they are merely a recitals of his deposition testimony.

[3] *See, e.g.*, Halasa Dep. 150:22-24 (hearsay), 151:3-14 (hearsay), 180:8-12 (speculation, lack of foundation, hearsay), 180:24-181:4 (lack of foundation, hearsay), 181:17-23 (speculation, lack of foundation, hearsay), 182:3-8 (speculation, lack of foundation, hearsay). For the

[Footnote continued on next page]

## III.
## HALASA HAS NOT MET HIS BURDEN
## TO SAVE HIS RETALIATION CLAIMS

**A.    Halasa Cannot Establish Protected Activity Because He Did Not Have A Reasonable, Good Faith Belief That ITT Was Actually Submitting False Claims To The Government Such That He Could Have Filed A FCA Lawsuit That Met The Rule 11 Standard**

An employee only engages in protected activity if he makes a complaint[5] that he in good

faith believed—and a <u>reasonable employee in similar circumstances would have believed</u>—his

---

[Footnote continued from previous page]
Court's convenience, ITT has attached an appendix of evidentiary objections setting forth the objectionable testimony. This objectionable evidence must be disregarded and cannot defeat summary judgment. Halasa also characterizes facts about which he has no personal knowledge as in dispute, yet offers no competent evidence to controvert these points. *See, e.g.*, Fact Nos.12, 14, 15, 18, 19, 21, 24, 25, 26, 29, 30, 31, 33, 35, 38, 41, 42, and 83.

[4] For example: (1) In his Opposition, Halasa states, "Hemphill passed his complaints up to John Hawthorne and Simich. (Ex. P)." Opp. at 11. However, Exhibit P is an e-mail from Gutierrez complaining about Halasa; it does not support this assertion. (2) In his Opposition, Halasa states that several representatives complained to him "that representatives were being compensated illegally based on the number of students they convinced to enroll at ITT." Opp. at 5. Nowhere in any of the cites to Dean Harris' deposition (Harris Dep. 45:19, 47:7, 48:3-13) does Harris say he made this complaint. (3) In his Opposition, Halasa characterizes as an example of something that actually occurred: "one student graduated with a degree in blueprint reading, was hired to set up displays at a retail store, and was encouraged to mark the 50 to 100 percent field because he was setting something up." Opp. at 8. However, Melanie Papke testified that this was an example used in training; she did not say it was a real example. Papke 58:24-60:14 ("Like a student that was in, let's say, blueprint reading . . . . ). (4) In his Opposition, Halasa characterizes Simich as "not able to recall any particular event that precipitated his decision to recommend termination." (Simich Dep. 146:9-24; 147:8-20). Opp. at 12. That's not accurate. Simich said that it was not any <u>one thing</u> — not that he could not recall one. Simich Dep. 147:11-20. Simich explained that it was a compilation of things that had escalated since April. *Id.* "As we moved into August, the other issue that began to get fairly intense were the issues relating to the representatives" and Halasa failing to effectively lead the recruitment department after the DOR went on leave. *Id.*

[5] There is no dispute that Halasa never reported his alleged concern regarding "document destruction" (Facts 74 and 75 are undisputed) thus, this alleged complaint cannot form the basis for protected activity.

employer was submitting false claims for payment to the government. *Fanslow v. Chicago Mfg. Center*, 384 F.3d 469, 480 (7th Cir. 2004) (emphasis added). Halasa has failed to establish that he engaged in protected activity because: (1) his alleged belief was based on speculation, rumor, and office gossip that he took no steps to verify, (2) he lacked proof or concrete facts on which to form a reasonable belief, (3) this lack of proof and details renders him incapable of satisfying the requirement of being able to file a FCA *qui tam* action consistent with Rule 11 (and thus the evidentiary showing needed to defeat summary judgment), and (4) at best, his alleged concerns relate to alleged violations of internal ITT policy, which is not protected by the FCA.

All Speculation: Halasa's allege belief is based entirely on speculation. Halasa himself admitted as much under oath: "Did I have proof? No. I told him from day one that I didn't have proof." Halasa Dep. 199:22-23 (emphasis added). To be reasonable, the belief must be based on objective facts about what actually happened and not just speculation about what might have happened. *Id.* While the FCA protects investigation, it does not protect employees like Halasa who merely take rumors and office gossip as true and fail to take steps to verify that they were accurate. *Lang* is fatal to Halasa's case. *Lang v. Northwestern University*, 472 F.3d 493 (7th Cir. 2006). In *Lang*, the plaintiff called the FBI and reported that the executives at her company were lying to the Federal Reserve to obtain easier terms. The FBI did not believe her story because it had been "based on nothing other than office gossip." *Id*. at 494. Plaintiff was terminated and filed a retaliation claim under the FCA. The district court concluded that plaintiff had "played the part of Chicken Little" because she "imagined fraud but lacked any objective basis for that belief; the people who fed her the rumors also lacked proof. There was no fire; there was not even smoke; there was just imagination run amok, and with no legitimate action 'to be filed' no protection from § 3730(h)." *Id*. at 495 (emphasis added). The Seventh Circuit

agreed, calling the district court's assessment "spot on." *Id*. While plaintiff may have been a "thorn in management's side," the statute is "not designed to protect pests." *Id*.

Similarly, Halasa's attempt to establish reasonableness by noting that his belief was based on "complaints from numerous ITT employees" (Opp. at 27) fails because their alleged beliefs, like his, were all based on speculation and hearsay office gossip that Halasa failed to investigate. For example:

- Grades/Attendance: Halasa's alleged belief is based solely on rumors and speculation from others (Opp. at 8-9), who testified that they too lack personal knowledge of any impropriety. Bell Dep. 28:5-14, 43:23-44:9, 46:13-16, 62:2-24 (Bell never saw grades being changed, he has no knowledge whether any of the allegations about Robinson changing grades are true, and he does not know whether any instructor ever gave students grades or attendance they did not earn); Thompson Dep. 127:9-135:20; 134:10-13 (Thompson's belief was based on rumors: "No, I have no evidence of that other than the students seemed sincere."), 34:6-9 (Students said they were going to the Registrar to have their records changed, but he does not know whether the records actually were changed); Papke Dep. 106:12-107:17 (her belief that there were improprieties in the Registrar's office was all based on the "rumor mill"); Heredia 40:8-43:21, 134:4-135:4 ("But that's just what I heard from my boyfriend, what he had heard from his friend.").

- Placement Tests: Halasa and the recruitment representatives with whom he claims to have discussed his alleged concerns based their belief solely on speculation. All of them saw a report showing that some applicants doubled their scores from one sitting to the next and, from that alone, speculated that scores had been changed. They wrongly assumed that it is impossible for an applicant to double his score (it is not) and possible for ITT to change a score (it is not—the tests are scored automatically by Wonderlic and sent electronically to ITT). Halasa Dep. 52:8-53:5, 101:25-102:2, 105:4-20; 106:9-108:14; Burr Decl., ¶¶ 4, 5; Thompson Dep. 140:11-141:7 ("Q: Issue No. 4 is 'Evidence of helping with student admissions exam.' Can you tell me what you mean by that? A: Well, this is just hearsay. I don't have any evidence of this. But there was a lot of talk in the rep. room that assistance was given to some students."); Roberts Dep. 133:4-134:16 (Roberts heard Robinson tell applicants that it is better to mark an answer than to leave a blank because blanks are automatically scored as a wrong answer, but he never heard him give an applicant an answer or improperly changed a score); Halasa Dep. 102:11-25 ("I didn't, you know, went deep enough to understand how, how she will do it.").

- GEI Forms: Halasa admitted he has no evidence that any student ever signed a GEI form containing false information, that he never signed a GEI form he believed was false, and that he did not take steps sufficient to investigate his speculation. Halasa Dep. 556:22-557:9, 153:1-3, 153:16-20, 156:20-157:11, 159:18-160:3, 162:13-19. Halasa testified that Angelo Ponce and another female student were asked to sign GEI forms pre-populated with inaccurate information, but to his knowledge, neither signed the form

and he did not take steps to determine how their graduate information was reported. Halasa Dep. 147:20-148:25 ("I didn't really go into it. I had way more other things to worry about and more headache. But the answer is no, I didn't follow up on this."). While Papke testified that one student signed a false GEI form, she later came to Papke to correct it. Papke Dep. 105:24-106:3. When asked at his deposition whether he took any steps to learn the names of the students whose GEI forms may be inaccurate, he testified that he did not and instead asked others to investigate, "It's not my job to go and find each name . . . I have other things to worry about." Halasa Dep. 156:25-157:25.

- Representative Compensation: Halasa observed that representatives who enrolled more students generally were paid more and, based on that information alone, speculated that ITT violated the incentive compensation ban by determining salaries based solely on their number of enrollments. Halasa Dep. 119:21-120:1, 126:15-21. His alleged belief was patently unreasonable in light of his admission at his deposition that they were paid based on the Representative Compensation Plan, which sets salaries based on four factors, including customer service and other factors that have nothing to do with the number of enrollments. Halasa Dep. 138:11-16. With respect to his allegations about lead allocations, Halasa was informed that ITT had investigated these allegations and was unable to substantiate them. Urschel Decl., ¶ 3, Ex. C. Halasa's alleged belief was not reasonable because it was based solely on rumor and speculation. *Lang*, 472 F.3d at 495.

No Evidence of Actual Fraud: Halasa also misstates the law by suggesting that he engaged in protected activity even though he lacked evidence of actual fraud because he was still investigating and might have uncovered a FCA violation. Opp. at 26-27. While an employee need not file a FCA *qui tam* action, he only engages in protected activity if he is at a point in his investigation that he could file a FCA *qui tam* action consistent with Rule 11.

> Investigation precedes rather than follows litigation. A better understanding is that "to be filed" limits coverage to situations in which litigation could legitimately be filed – that is consistent with Fed. R. Civ. P. 11. Then an employee who fabricates a tale of fraud to extract concessions from the employer, or who just imagines fraud but lacks proof, legitimately may be sacked. No action is 'to be filed' in either case, and employees who use reports of fraud to better their own position, or who behave like Chicken Little, impose costs on employers without advancing any of the goals of the False Claims Act.

*Neal*, 33 F.3d at 864 (emphasis added). Halasa was nowhere near that point. His opposition is completely devoid of the "who, what, when, how" facts necessary to establish a reasonable belief or plead a FCA *qui tam* action. He still cannot name a single student whose grades, attendance,

placement test, or graduate employment information was false and, therefore, he could not have filed a FCA *qui tam* action consistent with Rule 11.[6]

No False Claims for Payment To The Government:  Halasa also has not established that he engaged in protected activity because he failed to connect the dots; specifically, he has not shown that he had a reasonable belief that any of the alleged improprieties <u>resulted in a false claim for payment to the government</u>.  Violations of a company's internal policies are not actionable under the FCA and not all violations of the law, or even all false statements to the government, are actionable under the FCA--only false claims for payment submitted to the government.  *U.S. ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1020 (7th Cir. 1999) ("[T]he FCA is not an appropriate vehicle for policing technical compliance with administrative regulations.  The FCA is a fraud prevention statute . . . ."); *United States ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 448 (6th Cir. 2008); *Turner v. Anheuser- Busch, Inc.*, 7 Cal. 4th 1238, 1257 (1994) (California's "tort of wrongful discharge is not a vehicle for enforcement of an employer's internal policies . . . .").  In *Marlar*, the court explained:

> [T]he False Claims Act does not create liability merely for a [claimant's] disregard of Government regulations or improper internal policies <u>unless, as a result of such acts, the [claimant] makes a false claim</u>.  *See Atkins*, 470 F.3d at 1357 (quoting *Clausen*, 290 F.3d at 1311).  Just because BWXT may have maintained incomplete or sloppy medical records, it does not necessarily follow that BWXT also submitted certifications to DOE that under-represented the number of work-related accidents and illnesses. BWXT could, for instance, have had an alternate reporting system for collecting information regarding work-

---

[6] *See e.g.,* Halasa Dep. 67:9-16 ("Why will I know [that attendance has been changed]? . . . This is five levels down.  I'm way up here."), 70:13-17 ("You see, I didn't follow up deeply enough to know a specific person [whose grades were changed]."), 71:9-16 ("You know, how will I know [that grades or attendance have been changed]?  Just tell me how?"); 94:10-12 ("No, I don't know any specific [applicants whose placement test scores were actually changed]."), 556:22-25 ("Q: But you've never heard of any student actually signing a [GEI] form that contained inaccurate information, have you?  A: The answer is no.").

related injuries and illnesses so that it could ensure that its certifications to DOE were accurate. Ms. Marlar has alleged no specific facts to refute such a hypothesis.

*Marlar*, 525 F. 3d at 488 (emphasis added).

While Halasa makes conclusory assertions about the Program Participation Agreements and accreditation standards, he fails to: (i) attach or cite to anything in these materials supporting these assertions and (ii) identify which portion of ITT's claims for payment were false or show any connection between such claims and his alleged complaints. He presents no evidence that any of the following alleged concerns resulted in false claims for payment to the government:

- <u>Placement Tests</u>: ITT is not required to administer placement tests, does not use the Wonderlic placement test as an ability to benefit test, and does not even report the tests results outside ITT. Burr Decl. ¶ 3. Therefore, improper testing practices—even if true— cannot support a FCA claim. At best, improper testing could be a violation of ITT policy and not fraud on the government.

- <u>Graduate Employment Data</u>: Halasa fails to show that an inaccurate GEI form would result in a false claim for payment to the government or that he had any reasonable basis to believe that a false GEI form would not have been caught and corrected before it was released outside ITT. *See Marlar*, 525 F.3d at 488. As College Director, Halasa signed all GEI forms, he admits he never signed a GEI form he believed contained inaccurate information, and it is undisputed that GEI forms are reviewed extensively at headquarters before any graduate employment data is released outside ITT. Halasa Dep. 153:1-3, 153:16-20; Rusiloski Decl. ¶ 5.[7] At best, his concerns related to alleged violations of ITT policy, not any reasonable belief that inaccurate data was reported outside ITT.

- <u>Lead Allocation</u>: Halasa's alleged complaint with respect to leads (and the complaints by the representatives) was that Gutierrez was improperly taking leads in violation of ITT's internal policy on lead assignments, not that representatives were being unlawfully compensated. Opp. at 5. These alleged complaints could not constitute a FCA claim because the incentive compensation ban does not regulate how leads are distributed among representatives. 20 U.S.C. § 1094(a)(20).

- <u>Grades/Attendance</u>: Halasa has failed to demonstrate how (or offer any proof) that any alleged grade or attendance changes resulted in any false claims for payment to the

---

[7] With respect to Papke's claim that she was told to enter data in ITT's internal computer database prematurely, the alleged issue was primarily timing, not a knowing entry of false data. Papke Dep. 79:9-18. Regardless, she refused to enter data early and never entered data she thought was inaccurate. *Id.*

government (particularly in light of the fact he cannot even identify any student whose grade or attendance was changed or what change allegedly was made).

**B.**     **Halasa Fails To Offer Any Evidence That The Decision-Makers Knew About His Alleged Complaints**

Summary judgment must be granted because Halasa failed to offer any evidence that the decision-makers knew about his alleged complaints. *Luckey v. Baxter Healthcare Corp.*, 183 F.3d 730, 733 (7th Cir. 1999); *Abner v. Jewish Hosp. Health Care Services*, No. 4:05-cv-106-RLY-WGH, 2010 WL 1381816, at * 10 (S.D. Ind. Mar. 31, 2010). "If the defendants were not afforded such notice, then, *a fortiori*, their actions could not constitute retaliation." *Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1522 (10th Cir. 1996). At one point he asserts in a conclusory manner that the decision-makers knew (Opp. at 29). This is deficient as a matter of law. Halasa admits that he never told the decision-makers, Barry Simich, Gene Feitchner, Nina Esbin or Kevin Modany, about his alleged complaints and he cites no evidence whatsoever—either direct or circumstantial—that they learned from other sources.[8] Pl.'s Rsps. To Interrog. Nos. 6, 11, 16, 21; Simich Dep. 159:1-9, 215:1-216:13. His opposition at pages 29-30 on this point is all speculation and conjecture, which do not create a triable issue of fact.

Halasa's attempt to overcome the speculation problem by arguing that the fact-finder can assume that non-decision-makers told the decision-makers about his alleged complaints has been squarely rejected by courts in this circuit as improper speculation. In *Abner*, the court granted the employer's motion for summary judgment, in part because the knowledge requirement of

---

[8] To the extent Halasa may be suggesting that temporal proximity between the alleged protected activity and termination can establish knowledge by the decision makers, he is mistaken. The *Mullhall* case he cites (Opp. at 29), holds that timing may be a factor in considering pretext (but only when combined with other evidence), which is a different element of his case. *Mullhall v. Ashcroft*, 287 F.3d 543, 551-52 ( 6th Cir. 2002).

3037(h) had not been satisfied. *Abner*, 2010 WL 1381816, at * 10. The Court rejected the argument that the decision-makers must have had knowledge of the plaintiffs' protected conduct because a reasonable jury could conclude that when plaintiffs told another employee that fraud was taking place, that employee "immediately went to the CEO of [defendant company] and told him what [Plaintiffs] had said." *Id.* Noting that plaintiffs failed to cite evidence to support their assertion, the court stated that plaintiffs could not "create a genuine issue of material fact by resting on mere speculation" that by telling one employee, that one employee would have told the CEO. *Id.* (emphasis added); *see, e.g.*, *Mulhall v. Ashcroft*, 287 F.3d 543, 553-54 ( 6th Cir. 2002) (In affirming summary judgment for the employer in a Title VII retaliation case, the court noted that, to find knowledge, "we would have to go further and infer that [the non-decision maker] shared this information with [the decision-makers]. There is simply no evidence on the record, direct or circumstantial, to support such an inference, other than the adverse action itself.").

Similarly here, even if Halasa could prove that non-decision-makers knew about his alleged complaints, Halasa has not produced any evidence from which the fact-finder could assume that they told any decision maker. He instead improperly relies on speculation to attempt to establish knowledge on the part of the decision-makers. Halasa has not and cannot point to a single piece of evidence that anyone communicated his alleged complaints to any of the decision-makers or that they were otherwise aware. These facts by themselves are fatal to Halasa's claim and compel summary judgment.

Halasa's related argument that the Court can assume that the decision-makers knew about his alleged complaints because they "were copied on e-mails discussing the Lathrop Campus and Halasa and received copies of EAL reports" (Opp. at 30) also fails because none of these

communications constitute or discuss Halasa making any of his alleged complaints. Instead, these communication largely reflect ITT's concerns about Halasa's leadership and judgment that motivated his termination—which have nothing whatsoever to do with his alleged complaints. The fact that there are numerous e-mails and documents sent to the decision-makers documenting ITT's concerns about his leadership and judgment yet <u>no e-mails or documents</u> whatsoever regarding his alleged complaints (and certainly none sent to the decision-makers) further evidences that they were not informed about any of his alleged complaints.

C.     **Halasa's Characterization Of His Role As "Merely At The Top Of The Reporting Pyramid" Is Not Sufficient To Overcome The Overwhelming, Undisputed Evidence That He Was A Fraud Alert Employee**

Halasa does not dispute that, as a matter of law, employees whose jobs include investigating fraud are "fraud alert employees" and must satisfy a heightened notice requirement. *Brandon v. Anesthesia & Pain Mgmt. Assoc., Ltd.*, 277 F.3d 936, 945 (7th Cir. 2002). Halasa also does not dispute that fraud alert employees must tell their employer that they actually intend either to bring a FCA *qui tam* action or to report the alleged fraud to the government, which Halasa admits in his request for admission responses he never did. *Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1523, n. 7 ( 10th Cir. 1996) (Fraud alert employees must meet the heightened notice standard to "overcome the presumption that they are merely acting in accordance with their employment obligations" and put the employer on notice that they are engaging in protected activity); *Brandon*, 227 F.3d at 945; Pl.'s Rsps. to RFA Nos. 4 – 5 at 4.

Halasa's claim that he was not a fraud alert employee because he was merely at "the top of the reporting pyramid" is a *nonsequitor*. It is precisely because Halasa was in the top leadership position at Lathrop, and thereby positioned to receive information from those reporting to him, investigate, and change practices that he was Lathrop's top fraud alert

employee. Halasa does not refute or offer contrary evidence that during his entire tenure, his job had the following attributes, which conclusively demonstrate his status as a fraud alert employee:

- Halasa admitted at his deposition that he was Lathrop's Local Compliance Officer, that part of his job was to investigate fraud, and that he believed he was doing his job by making the alleged reports. Halasa Dep. 237:2-22, 239:8-240: 5, 490:24-491:12 ("Q: And did you feel that in your role as the director and the local compliance officer that it was part of your job to bring this issue [grades] to Jeff Ortega's attention? A: Yes. Q: And to investigate that allegation? A: Yes. Q: And to take appropriate action? A: Absolutely.")

- The college director job description states that an "essential function" is to "serve[] as Local Ethics and Compliance Officer responsible for distributing standards; ensuring appropriate ethics and compliance communication and training; conducting, monitoring and responding to audits; assisting with the investigation and resolution of Alert Line calls and student complaints." Halasa Dep. Ex. 5 at § 9.

- College directors sign quarterly certifications that their schools are "in compliance with the requirements of PPA, ACICS, and State laws."[9] Halasa Dep. 239:8-240:5, Ex. 20.

- College directors help the internal auditors prepare annual internal audit reports, which assess compliance with ITT policies and applicable laws. The college director drafts the "cause" and remedial plan for each of the audit findings, which Halasa did for the August 7, 2009 Lathrop school audit report. Halasa Dep. 222:1-18, Ex. 15.

Halasa's attempt to distinguish *Brandon* and *Ramseyer* is unavailing because he fails to address or overcome the overriding principle that drives his status as a fraud alert employee: his duty to monitor and investigate fraud. For example, his claim that *Brandon* is distinguishable because he did not set lead or start goals, turn in grades and attendance, or prepare reports is nonsensical because there is no requirement that the employee prepare the underlying documents to qualify as a fraud alert employee, only that he be responsible for monitoring or investigating fraud with respect to the documents. Halasa's argument that investigating fraud was the role of the Compliance Department at headquarters, not his, and that he was "merely at the top of the reporting pyramid" is contradicted by the evidence that it was his duty to monitor and investigate

---

[9] Halasa signed two such certifications. Halasa Dep. 239:8-240:5, Ex. 20; Def.'s RFA Nos. 14 and 15 at 5; Pl.'s Rsps. to RFA Nos. 14 and 15 at 7.

fraud and, as Lathrop's Local Ethics and Compliance Officer and the top compliance person on site at the school in charge of all operations, compliance was an essential function.

### D. Halasa Fails To Offer Evidence Sufficient To Establish Pretext

Because Halasa failed to establish a *prima facie* case, summary judgment must be entered and the Court never reaches the issue of pretext. Even if he had, Halasa failed to offer evidence to create a triable issue of fact that the reason for his termination is pretext for retaliation, meaning that it is <u>so baseless and implausible as to not be credible</u>.[10] Significantly, the underlying incidents that caused ITT to conclude that he lacked leadership and judgment are largely undisputed. For example, there is no dispute that he sent the April 30 termination announcement, he referred to himself as the "King" and subordinates as the "mafia," he

---

[10] Halasa misstates the law when he says it is not his burden to prove pretext or implies that it is ITT's burden to establish a lack of pretext (Opp. at 30). It is his burden in opposing summary judgment to offer evidence sufficient to establish a triable issue of fact as to every element of his claim, one of which is that he was terminated because of his alleged protected activity. *Celotex*, 477 U.S. at 317. That is true regardless of what framework is applied. Courts in the Seventh Circuit have applied the *McDonnell Douglas* standard to other types of employment claims. *See, e.g.*, *Stone v. City of Indianapolis Public Utilities Division*, 281 F.3d 640, 644 (7th Cir. 2002) (Title VII retaliation claim); *Hasan v. Dept. of Labor*, 400 F.3d 1001, 1003-04 (7th Cir. 2005) (retaliation claim under the Energy Reorganization Act). Numerous courts in other circuits have applied the *McDonnell Douglas* burden-shifting standard to a FCA §3730(h) claim. *See, e.g.*, *Parato v. Unadilla Health Care Center, Inc.*, --F. Supp. 2d ----, 2011 WL 1196067, at *9 (M.D. Ga Mar. 28, 2011), *Anderson v. Graybar Elec. Co., Inc.*, No. 09-251 (MJD/FLN), 2010 WL 2545508 (D. Minn. June 18, 2010), , *Turner v. DynMcDermott Petroleum Operations Co.*, No. 06-1455, 2010 WL 4363403, at *2 (E.D. La. Oct. 21, 2010), *Kakeh v. United Planning Org., Inc.*, 655 F. Supp. 2d 107 (DC Cir. 2009), *Erickson v. Uintah Special Services Dist.*, 268 Fed. Appx. 714, 717, 2008 WL 634979, at *3 (10th Cir. Mar. 6, 2008), *Scott v. Metropolitan Heath Corp.*, 234 Fed. Appx. 341, 346 (6th Cir. Apr. 3, 2007). Significantly, none of the cases Halasa cites in footnote 10 of his Opposition explicitly rejects the *McDonnell Douglas* framework. Rather those courts have articulated the elements of a FCA retaliation case as requiring the plaintiff to show that he engaged in protected activity, the employer had knowledge, and the employee was terminated because of the protected activity and required the plaintiff to proffer evidence as to each element to defeat summary judgment – including causation. This court need not decide what framework applies because under either framework, Halasa failed to meet his burden to establish that he was terminated because of his alleged complaints.

interrogated Gutierrez in front of the other representatives, there was dysfunction and performance issues among the Recruitment representatives, Career Services was underperforming, etc.  Halasa Dep. 463:9-19, Ex. 41, 257:25, 186:8-187:8.

Halasa's attempt to frame the issue as whether his lack of judgment and leadership warranted termination or whether it would have been more fair and appropriate to give him a more formal written warning or to differently document the concerns with his performance asks the wrong questions.  Halasa cannot defeat summary judgment by claiming that his termination was unfair, unwise, or contrary to best practices because the only issue is whether ITT acted with a retaliatory motive.  The court's role is not to second guess ITT's personnel decisions.  Thus, to establish pretext, Halasa must submit evidence that ITT failed to make a "<u>reasonably informed and considered decision" and that the termination decision was so baseless and implausible as to be unworthy of belief</u>, which Halasa cannot do.  *Scott,* 234 Fed. Appx. at 346 (citing *Balmer v. HCA, Inc.*, 423 F.3d 606, 614 (6th Cir. 2005); *see also Boze v. General Elec. Co.,* No. 4:07CV-74-M, 2009 WL 2485394, at *9 (W.D. Ky. Aug. 11, 2009) ("the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder [six]could rationally find them unworthy of credence" in Title VII retaliation case); *US ex rel. Erickson v. Uintah Special Services Dist.,* No. 2:02CV581DAK, 2007 WL 81806, *1-2 (D. Utah Jan. 8, 2007) (burden is on the non-moving party in FCA retaliation case to demonstrate that employer's stated basis for termination "is so weak, implausible, contradictory, inconsistent, or incoherent as to be unworthy of belief").

ITT's belief that Halasa showed an unacceptable lack of leadership and judgment has not been controverted with any evidence.  Nor does Halasa dispute or offer any evidence that lack of

judgment and leadership are lawful grounds for terminating a College Director. His own personal opinions, and those of his subordinates, that he was treated unfairly and terminated for "being the squeaky wheel" are irrelevant speculation that is not admissible evidence to defeat summary judgment.

Halasa's mischaracterization as ITT terminating him for engaging in protected activity is grossly inaccurate. To the extent he is referring to his mishandling of the representatives' complaints about Gutierrez taking other representatives' leads, ITT did not terminate him for raising concerns, but rather for his lack of judgment in the way he went about it. *See* Facts 24 and 25.

Halasa's comparison of himself to Bill Robinson, the Dean, is unavailing because Halasa failed to establish the necessary foundation: that Robinson and he were similarly situated. To be deemed similarly situated and a relevant comparator, the individual with whom the plaintiff seeks to compare his treatment generally must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct. *Hollins v. Atlantic Co., Inc.,* 188 F.3d 652, 659 (6th Cir. 1999); *see also , Covert v. Monroe County Dept. of Job and Family Services*, No. 2:08-CV-744, 2010 WL 2346550 at *16 (S.D. Ohio, June 8, 2010) (generally in cases alleging disparate disciplinary action, the individual with whom the plaintiff seeks to compare her treatment must have dealt with the same decision-maker, *e.g.*, supervisor), *E.E.O.C. v. Memphis Goodwill Indus. Inc.*, 675 F. Supp. 2d 846, 853 (W.D. Tenn. 2009) (same). Robinson and Halasa held different positions, had different duties, and reported to different supervisors (discipline decisions regarding deans generally are made at the school level whereas for college directors they generally are made at headquarters). Furthermore, the concerns raised

about Robinson (as described at Opp. at 23) were too different from those regarding Halasa to render any comparison meaningful or relevant.

has failed to meet his causation burden under either standard.

## IV.
## THE CALIFORNIA RETALIATION CLAIM FAILS
## FOR THE SAME REASONS

Halasa has not identified any reason why his *Tameny* claim might survive summary judgment if his FCA claim does not. Halasa's argument that his termination implicated a public policy is immaterial for purposes of this motion because failure to offer evidence sufficient to establish a triable issue of fact as to the other elements of the claim—that he engaged in protected activity, that ITT knew about it, and that ITT terminated him because of his alleged protected activity—warrants summary judgment. *Turner,* 7 Cal. 4th at 1256.

## V.
## HALASA'S PERSONAL VIEW ABOUT WHAT IS A TERMINABLE
## OFFENSE FAILS TO ESTABLISH A TRIABLE ISSUE OF FACT AS TO
## THE AFTER-ACQUIRED EVIDENCE DOCTRINE

Halasa mischaracterizes his deposition testimony when he says he is not sure if he reviewed the forms before signing them – he admitted at his deposition that <u>he did not</u>:

> Q: Would you have signed a form where the student went to work at Best Buy and you saw that they had a degree in computer science?
>
> A: You don't look – no. When you have this forms, all what you do is just sign. This is how. I will be lucky to look at other like one step before. No.
>
> Q: <u>Really? You didn't read the forms before you signed them</u>?
>
> A: <u>Yeah. I'm sorry. I didn't</u>. You know, usually you count on the people that you trust that you hire. . . .

Halasa Dep. 559: 4-15; *Bank of Illinois*, 75 F.3d at 1168-69; *LaFary*, 591 F.3d at 908. Halasa does not dispute that "rubber stamping" GEI forms as the College Director, without reading them, violated ITT policy. His personal view that this was not a terminable offense and instead warranted a warning is irrelevant and does not establish a triable issue of fact.

Halasa's excuse that he did not know that he was supposed to read the forms before signing to approve them must be rejected because it is flatly contradicted by his own argument as to the importance of those forms – Halasa argues that falsifying GEI forms is so serious that it violates the FCA. He cannot have it both ways. Further, ITT's Career Services policy entitled, "Documenting a Valid Employment," the very policy he claims to have reported was not being followed, instructed him to read the forms:

> 8. After the DOCS has signed the GEI, the DOCS' Supervisor [the College Director] should review the entire Career Services file and verify that the employment is valid and has been documented correctly. After verification has been made, the Supervisor should sign and date the GEI on the Supervisor signature line.

Rusiloski Decl., ¶ 4, Ex. B.

Halasa also failed to offer admissible evidence to refute Simich's declaration, which states that, had Halasa not been terminated on September 9, he certainly would have been terminated when ITT learned he was approving GEI forms without reading them, particularly on top of the many other performance issues. Simich Decl., ¶ 7. Halasa's personal interpretation of ITT's Corrective Action Policy as requiring only a warning (Opp. P. 34) lacks foundation and is inaccurate. The policy states: "Depending on the situation, however, ITT may repeat, modify, omit, or employ any corrective action without reference to the levels of corrective action. ITT/ESI also reserves the right to terminate employees immediately." Urschel Dep. 174:24-176:5, Ex. 185 (emphasis added). Finally, that Halasa may be unaware of other directors who were terminated for signing GEI forms without reading them is immaterial because it assumes, with no evidence, that there was another director who engaged in the same misconduct.

## VI.
## CONCLUSION

ITT respectfully requests that summary judgment be entered because Halasa failed to present admissible evidence sufficient to establish a triable issue of fact to three essential elements of his case: (1) that he engaged in protected activity, (2) that the decision-makers knew about his alleged protected activity, and (3) that ITT's legitimate, non-retaliatory reason for termination is pretext for retaliation.

DATE:  May 31, 2011

Respectfully submitted,

ICE MILLER LLP

By:  **s/ Philip A. Whistler**

Philip A. Whistler
Philip.whistler@icemiller.com
ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, Indiana 46282
Phone: (317) 236-2349
Fax: (317) 592-4790

Elisabeth C. Watson,
Admitted *Pro Hac Vice*
ewatson@gibsondunn.com
Lynn N. Hang,
Admitted *Pro Hac Vice*
lhang@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California 90071
Phone: (213) 229-7000
Fax: (213) 299-7520

***Counsel for ITT Educational Services, Inc.***

# APPENDIX: ITT'S OBJECTIONS TO PLAINTIFF'S EVIDENCE

| *Plaintiff's Evidence* | *Basis for Objection* |
|---|---|
| Bell Dep. 17:24-18:4 | Lack of foundation, speculation |
| Bell Dep. 18:6-7 | Lack of foundation, speculation |
| Bell Dep. 28:9-11 | Lack of foundation, speculation |
| Bell Dep. 42:24-43:2 | Lack of foundation, speculation, hearsay |
| Bell Dep. 44:13 | Lack of foundation, speculation, hearsay, rule of completion requires inclusion of 44:14-45:3 |
| Bell Dep. 46:7-8 | Hearsay |
| Bell Dep. 48:4, 10-11 | Lack of foundation, speculation, hearsay |
| Bell Dep. 59:17-18 | Hearsay |
| Bell Dep. 60:7-9, 11-14, 17-19 | Hearsay, lack of foundation, speculation |
| Bell Dep. 61:10-11, 16, 18, 20, 23-24 | Hearsay, lack of foundation, speculation |
| Bell Dep. 65:18-66:4 | Hearsay |
| Bell Dep. 68:24-25 | Hearsay, lack of foundation, speculation |
| Bell Dep. 69:13-15 | Hearsay |
| Bell Dep. 83:18 | Lack of foundation, speculation |
| Bell Dep. 84:12 | Lack of foundation, speculation |
| Bell Dep. 89:1-7 | Lack of foundation, speculation |
| Halasa Affidavit Paragraph 8 | Lack of foundation, speculation |
| Halasa Affidavit Paragraph 9 | Lack of foundation, speculation, hearsay |
| Halasa Affidavit Paragraphs 4-5 | Relevance, lack of foundation, speculation, assumes facts (that any other college director ever engaged in the subject behavior) |
| Halasa Dep. 23:6-17 | Lack of foundation, speculation, hearsay |
| Halasa Dep. 49:23-50:5 | Lack of foundation, speculation, non-responsive |
| Halasa Dep. 50:8 | Lack of foundation, speculation |
| Halasa Dep. 50:16-51:13 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 52:11-54:12 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 55:18-56:9 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 56:24-57:11 | Lack of foundation, speculation |
| Halasa Dep. 57:21-22 | Lack of foundation, speculation, non-responsive |
| Halasa Dep. 58:1-7, 14-20 | Lack of foundation, speculation, non-responsive |
| Halasa Dep. 60:13-17 | Hearsay |
| Halasa Dep. 62:24-63:8 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 63:17-21 | Hearsay |
| Halasa Dep. 64:9-12 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 65:16-24 | Hearsay |
| Halasa Dep. 66:4-6 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 66:9-12 | Hearsay |
| Halasa Dep. 66:16-21 | Lack of foundation, speculation |

# APPENDIX: ITT'S OBJECTIONS TO PLAINTIFF'S EVIDENCE

| Plaintiff's Evidence | Basis for Objection |
|---|---|
| Halasa Dep. 67:17-68:7 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 68:9-19 | Hearsay |
| Halasa Dep. 69:6-12 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 69:17-18 | Hearsay |
| Halasa Dep. 69:24-70:1 | Lack of foundation, speculation |
| Halasa Dep. 70:15-23 | Lack of foundation, speculation |
| Halasa Dep. 71:3-4 | Lack of foundation, speculation |
| Halasa Dep. 71:20-25 | Hearsay |
| Halasa Dep. 72:11-14 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 73:8-18, 22-24 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 74:3-12 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 74:18-77:13 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 78:2-4 | Hearsay |
| Halasa Dep. 78:16-21 | Lack of foundation, speculation, non-responsive |
| Halasa Dep. 79:10-13 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 80:11 | Lack of foundation, speculation, hearsay |
| Halasa Dep. 80:14-18 | Lack of foundation, speculation |
| Halasa Dep. 80:19-24 | Hearsay |
| Halasa Dep. 81:23-82:2 | Hearsay |
| Halasa Dep. 83:4-14 | Hearsay |
| Halasa Dep. 84:16-21 | Hearsay |
| Halasa Dep. 86:7-10 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 86:14-21 | Lack of foundation, speculation |
| Halasa Dep. 87:7-9 | Lack of foundation, speculation |
| Halasa Dep. 87:22-23 | Lack of foundation, speculation |
| Halasa Dep. 88:4-15 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 89:3-9 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 89:12, 17-18, 24-25 | Hearsay |
| Halasa Dep. 90:3-7 | Hearsay, non-responsive |
| Halasa Dep. 91:12-16 | Hearsay |
| Halasa Dep. 92:18 | Lack of foundation, speculation |
| Halasa Dep. 92:20-93:18 | Lack of foundation, speculation |
| Halasa Dep. 93:22-94:2 | Lack of foundation, speculation |
| Halasa Dep. 94:5-9 | Lack of foundation, speculation |
| Halasa Dep. 95:1-9, 16-19, 22-24 | Lack of foundation, speculation |
| Halasa Dep. 96:4-8 | Hearsay |
| Halasa Dep. 97:11-21 | Lack of foundation, speculation |
| Halasa Dep. 99:22 | Lack of foundation, speculation |
| Halasa Dep. 99:24 | Lack of foundation, speculation |

| *Plaintiff's Evidence* | *Basis for Objection* |
|---|---|
| Halasa Dep. 100:1-3 | Lack of foundation, speculation |
| Halasa Dep. 100:7-14 | Lack of foundation, speculation, relevance, hearsay |
| Halasa Dep. 100:21-101:4 | Lack of foundation, speculation, relevance |
| Halasa Dep. 101:19-22 | Lack of foundation, speculation |
| Halasa Dep. 101:25-102:2 | Lack of foundation, speculation |
| Halasa Dep. 102:6 | Lack of foundation, speculation |
| Halasa Dep. 102:8-9 | Lack of foundation, speculation |
| Halasa Dep. 102:14-15 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 102:20-103:6 | Lack of foundation, speculation |
| Halasa Dep. 104:3-7, 11-12, 15-17 | Lack of foundation, speculation |
| Halasa Dep. 104:24-105:3 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 105:9-12, 18-20 | Hearsay |
| Halasa Dep. 105:24-106:4 | Lack of foundation, speculation |
| Halasa Dep. 106:11-16 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 106:23-107:11 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 108:18-23 | Hearsay |
| Halasa Dep. 113:25-114:9 | Hearsay |
| Halasa Dep. 115:1-3 | Hearsay |
| Halasa Dep. 115:8-11 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 116:17-19, 21-25 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 117:3-7 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 118:1, 3-4, 7-8, 10-16 | Hearsay |
| Halasa Dep. 120:1 | Lack of foundation, speculation |
| Halasa Dep. 120:3-121:3 | Lack of foundation, speculation |
| Halasa Dep. 121:5-24 | Lack of foundation, speculation, hearsay |
| Halasa Dep. 122:5-15 | Lack of foundation, speculation |
| Halasa Dep. 123:10-11 | Lack of foundation, speculation |
| Halasa Dep. 125:10-19 | Lack of foundation, speculation |
| Halasa Dep. 128:17-23 | Lack of foundation, speculation |
| Halasa Dep. 129:14-130:1 | Lack of foundation, speculation |
| Halasa Dep. 131:16-132:12 | Lack of foundation, speculation |
| Halasa Dep. 132:14-15, 17-18, 20-21 | Hearsay |
| Halasa Dep. 138:24-139:24 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 140:2-17 | Lack of foundation, speculation, hearsay |
| Halasa Dep. 141:10-22 | Lack of foundation, speculation, hearsay |
| Halasa Dep. 141:2-5 | Lack of foundation, speculation |
| Halasa Dep. 142:15-20 | Lack of foundation, speculation |
| Halasa Dep. 143:20-23 | Lack of foundation, speculation |
| Halasa Dep. 144:4-8, 12-16, 19-23 | Lack of foundation, speculation, hearsay |

# APPENDIX: ITT'S OBJECTIONS TO PLAINTIFF'S EVIDENCE

| *Plaintiff's Evidence* | *Basis for Objection* |
|---|---|
| Halasa Dep. 145:2 | Lack of foundation, speculation |
| Halasa Dep. 145:4-7 | Lack of foundation, speculation, hearsay |
| Halasa Dep. 145:24-146:12 | Lack of foundation, speculation, hearsay |
| Halasa Dep. 146:14-22 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 149:22-24 | Lack of foundation, speculation, non-responsive |
| Halasa Dep. 150:3-8 | Lack of foundation, speculation |
| Halasa Dep. 150:10-11 | Lack of foundation, speculation |
| Halasa Dep. 150:15-20 | Lack of foundation, speculation |
| Halasa Dep. 150:22-24 | Lack of foundation, speculation, hearsay |
| Halasa Dep. 151:3-14 | Hearsay, non-responsive |
| Halasa Dep. 151:20-152:3 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 152:10-13, 15, 21-23 | Lack of foundation, speculation |
| Halasa Dep. 154:25-155:4 | Lack of foundation, speculation |
| Halasa Dep. 155:7 | Lack of foundation, speculation |
| Halasa Dep. 157:4-25 | Lack of foundation, speculation |
| Halasa Dep.158:4-6, 10-12 | Hearsay |
| Halasa Dep. 158:17-159:17 | Hearsay |
| Halasa Dep. 178:15-21 | Hearsay |
| Halasa Dep. 180:8-12 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 180:24-181:4 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 181:17-23 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 182:3-8 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 182:21-23 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 183:10-18 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 183:25-184:3 | Hearsay |
| Halasa Dep. 185:23-186:7 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 188:14 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 189:4 | Lack of foundation, speculation |
| Halasa Dep. 189:10-17, 19-20 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 190:3-5 | Hearsay |
| Halasa Dep. 190:14-16 | Lack of foundation, speculation |
| Halasa Dep. 190:24-191:8 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 191:15-24 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 192:7-10 | Lack of foundation, speculation |
| Halasa Dep. 193:18-23 | Hearsay |
| Halasa Dep. 199:19-21 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 200:1-3 | Hearsay |
| Halasa Dep. 204:16-19 | Hearsay |
| Halasa Dep. 205:1-14 | Hearsay, lack of foundation, speculation |

# APPENDIX: ITT'S OBJECTIONS TO PLAINTIFF'S EVIDENCE

| *Plaintiff's Evidence* | *Basis for Objection* |
|---|---|
| Halasa Dep. 213:9-14 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 213:18-214:6 | Hearsay |
| Halasa Dep. 214:21-215:3 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 216:2 | Lack of foundation, speculation |
| Halasa Dep. 217:23-218:2 | Lack of foundation, non-responsive, speculation |
| Halasa Dep. 219:21-25 | Lack of foundation, speculation |
| Halasa Dep. 220:3-9, 15-18, 20-22 | Lack of foundation, speculation |
| Halasa Dep. 221:2-3 | Lack of foundation, speculation |
| Halasa Dep. 221:6-9, 13-15 | Lack of foundation, speculation |
| Halasa Dep. 226:14-15 | Hearsay |
| Halasa Dep. 230:19-20 | Lack of foundation, speculation |
| Halasa Dep. 231:1-13, 18-25 | Hearsay |
| Halasa Dep. 484:21-24 | Hearsay |
| Halasa Dep. 485:14-17 | Hearsay |
| Halasa Dep. 485:25-486:25 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 487:21 | Hearsay |
| Halasa Dep. 488:10 | Hearsay |
| Halasa Dep. 488:18-489:1 | Hearsay |
| Halasa Dep. 489:19-490:4 | Hearsay |
| Halasa Dep. 490:18-23 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 491:3 | Hearsay |
| Halasa Dep. 492:4-493:5 | Hearsay |
| Halasa Dep. 493:15-18 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 500:4-15 | Hearsay |
| Halasa Dep. 502:10-16 | Hearsay |
| Halasa Dep. 523:19-524:6 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 528:6-12 | Hearsay |
| Halasa Dep. 532:3-4 | Hearsay |
| Halasa Dep. 532:16-20 | Non-responsive |
| Halasa Dep. 532:24-533:4 | Non-responsive |
| Halasa Dep. 533:12-23 | Hearsay |
| Halasa Dep. 534:7-12 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 537:24-25 | Lack of foundation, speculation |
| Halasa Dep. 537:4-7 | Hearsay |
| Halasa Dep. 538:13-24 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 538:7, 10 | Hearsay |
| Halasa Dep. 540:14-15 | Hearsay |
| Halasa Dep. 540:18-20, 23-25 | Hearsay |
| Halasa Dep. 541:8-10 | Hearsay |

| Plaintiff's Evidence | Basis for Objection |
|---|---|
| Halasa Dep. 541:12-20 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 548:18-549:5 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 559:17-18 | Lack of foundation, speculation |
| Halasa Dep. 591:23-592:3 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 592:7-8 | Non-responsive |
| Halasa Dep. 592:12-16, 21-24 | Lack of foundation, non-responsive, speculation |
| Halasa Dep. 593:13-14 | Lack of foundation, non-responsive, speculation |
| Halasa Dep. 593:19 | Hearsay |
| Halasa Dep. 593:22-23 | Lack of foundation, speculation |
| Halasa Dep. 594:1, 5-12 | Lack of foundation, speculation |
| Halasa Dep. 617:17-21 | Hearsay, lack of foundation, speculation |
| Halasa Dep. 622:11-19 | Hearsay |
| Halasa Dep. 635:25 | Hearsay |
| Halasa Dep. 636:3 | Lack of foundation, speculation |
| Harris Dep. 28:11-18 | Lack of foundation, speculation, relevance |
| Harris Dep. 31:20-22 | Relevance, speculation, lack of foundation |
| Harris Dep. 62:15-19 | Hearsay, lack of foundation, speculation |
| Harris Dep. 62:25-63:1 | Hearsay |
| Harris Dep. 64:5 | Relevance |
| Harris Dep. 64:8-13 | Relevance |
| Harris Dep. 64:15-20 | Relevance |
| Harris Dep. 65:8 | Relevance |
| Harris Dep. 65:10-15 | Foundation, speculation, relevance, lack of foundation |
| Harris Dep. 66:3 | Relevance |
| Harris Dep. 66:11 | Relevance, hearsay |
| Harris Dep. 67:5-14 | Relevance, speculation, lack of foundation |
| Harris Dep. 67:18-22 | Hearsay |
| Harris Dep. 67:24-68:2 | Relevance, speculation, lack of foundation |
| Hemphill Dep. 111:13-14 | Hearsay |
| Hemphill Dep. 128:19-22 | Hearsay |
| Hemphill Dep. 140:16-18 | Hearsay |
| Hemphill Dep. 155:7-10 | Hearsay |
| Hemphill Dep. 169:2-5 | Hearsay |
| Heredia Dep. 33:1-21 | Hearsay, lack of foundation, speculation |
| Heredia Dep. 42:1-8 | Hearsay |
| Heredia Dep. 42:13-14 | Hearsay |
| Heredia Dep. 42:17 | Hearsay |
| Heredia Dep. 42:20-21 | Speculation, lack of foundation |
| Heredia Dep. 65:23-66:21 | Relevance, hearsay |

## APPENDIX: ITT'S OBJECTIONS TO PLAINTIFF'S EVIDENCE

| *Plaintiff's Evidence* | *Basis for Objection* |
|---|---|
| Heredia Dep. 66:23-68:14 | Relevance, lack of foundation, speculation |
| Heredia Dep. 68:17-21 | Relevance, lack of foundation, speculation |
| Heredia Dep. 134:1-12 | Hearsay |
| Heredia Dep. 134:15-18 | Hearsay |
| Heredia Dep. 134:23-135:1 | Hearsay |
| Heredia Dep. 135:4 | Hearsay |
| Papke Dep. 30:18-20 | Hearsay, speculation, lack of foundation |
| Papke Dep. 30:23-31:1 | Lack of foundation, speculation, hearsay |
| Papke Dep. 31:4-5 | Speculation, lack of foundation |
| Papke Dep. 31:8-11 | Speculation, lack of foundation |
| Papke Dep. 31:14-21 | Speculation, lack of foundation, hearsay |
| Papke Dep. 41:24-42:4 | Lack of foundation, speculation |
| Papke Dep. 59:11-60:1 | Lack of foundation, speculation (hypothetical) |
| Papke Dep. 60:3-14 | Lack of foundation, speculation (hypothetical) |
| Papke Dep. 63:6-8 | Lack of foundation, speculation |
| Papke Dep. 66:24-67:6 | Hearsay |
| Papke Dep. 74:12-19 | Hearsay |
| Papke Dep. 78:11-16 | Hearsay |
| Papke Dep. 80:8-81:5 | Hearsay, lack of foundation, speculation |
| Papke Dep. 83:19-84:9 | Lack of foundation, speculation (hypothetical) |
| Papke Dep. 84:11-85:6 | Lack of foundation, speculation (hypothetical) |
| Papke Dep. 94:9-25 | Hearsay, lack of foundation, speculation |
| Papke Dep. 95:3-15 | Hearsay, lack of foundation, speculation |
| Papke Dep. 99:1-3 | Lack of foundation, speculation |
| Papke Dep. 99:5-6 | Lack of foundation, speculation, hearsay |
| Papke Dep. 99:10-15 | Lack of foundation, speculation, hearsay |
| Papke Dep. 99:17-19 | Lack of foundation, speculation, hearsay |
| Papke Dep. 103:14-15 | Lack of foundation, speculation, relevance |
| Papke Dep. 104:11-15 | Lack of foundation, speculation |
| Papke Dep. 105:11-23 | Hearsay, lack of foundation, speculation |
| Papke Dep. 106:25-107:3 | Hearsay, lack of foundation, speculation |
| Papke Dep. 107:7-20 | Hearsay, lack of foundation, speculation |
| Papke Dep. 107:22-23 | Lack of foundation, speculation |
| Papke Dep. 108:1-2 | Lack of foundation, speculation |
| Papke Dep. 109:12-19 | Lack of foundation, speculation |
| Papke Dep. 120:14-22 | Lack of foundation, speculation, relevance |
| Papke Dep. 121:4-16 | Lack of foundation, speculation, relevance |
| Papke Dep. 121:20-122:1 | Lack of foundation, speculation, relevance |
| Papke Dep. 122:7, 10-11 | Lack of foundation, speculation, relevance |

# APPENDIX: ITT'S OBJECTIONS TO PLAINTIFF'S EVIDENCE

| *Plaintiff's Evidence* | *Basis for Objection* |
| --- | --- |
| Papke Dep. 122:13-123:8 | Lack of foundation, speculation, relevance |
| Papke Dep. 123:10-15, 17, 23-25 | Relevance, hearsay, speculation, lack of foundation |
| Papke Dep. 124: 4, 10 | Lack of foundation, speculation, relevance |
| Papke Dep. 125:12 | Hearsay, lack of foundation, speculation |
| Papke Dep. 125:16 | Hearsay, lack of foundation, speculation |
| Papke Dep. 125:20-22 | Hearsay, lack of foundation, speculation |
| Papke Dep. 127:6-12 | Lack of foundation, speculation |
| Ponce Dep. 84:21-85:3 | Lack of foundation, speculation, relevance |
| Ponce Dep. 85:13-16 | Hearsay, lack of foundation, speculation |
| Ponce Dep. 85:22-86:10 | Hearsay, lack of foundation, speculation |
| Ponce Dep. 91:1-5 | Lack of foundation, speculation, hearsay |
| Ponce Dep. 91:8-17 | Lack of foundation, speculation, hearsay |
| Ponce Dep. 93:10-17 | Lack of foundation, speculation |
| Ponce Dep. 105:4-13 | Hearsay |
| Ponce Dep. 106:1-6 | Hearsay |
| Ponce Dep. 106:10-16 | Hearsay |
| Ponce Dep. 106:18-19 | Hearsay |
| Ponce Dep. 106:22-107:3 | Hearsay |
| Ponce Dep. 107:6-8 | Hearsay |
| Ponce Dep. 107:13 | Hearsay |
| Ponce Dep. 142:11-14 | Lack of foundation, speculation, hearsay |
| Ponce Dep. 142:16-143:1 | Lack of foundation, speculation, hearsay |
| Ponce Dep. 144:25-145:14 | Speculation, lack of foundation, hearsay |
| Ponce Dep. 145:20-146:2 | Speculation, lack of foundation, hearsay |
| Ponce Dep. 146:6-10 | Hearsay, lack of foundation, speculation |
| Ponce Dep. 166:1-6 | Lack of foundation, speculation |
| Ponce Dep. 184:15-185:18 | Hearsay |
| Roberts Dep. 47:19, 24-25 | Hearsay |
| Roberts Dep. 48:7 | Relevance, lack of foundation, speculation |
| Roberts Dep. 48:12 | Relevance, lack of foundation, speculation |
| Roberts Dep. 48:16 | Relevance, lack of foundation, speculation |
| Roberts Dep. 48:22 | Relevance, lack of foundation, speculation |
| Roberts Dep. 48:24-49:6 | Hearsay, relevance, lack of foundation, speculation |
| Roberts Dep. 49:8-21 | Hearsay, relevance, lack of foundation, speculation |
| Roberts Dep. 50:23-51:12 | Relevance, lack of foundation, speculation, hearsay |
| Roberts Dep. 51:14-52:4 | Relevance, lack of foundation, speculation, hearsay |
| Roberts Dep. 53:3-4 | Relevance, lack of foundation, speculation |
| Roberts Dep. 53:6 | Hearsay, speculation, lack of foundation |
| Roberts Dep. 53:15-18 | Hearsay |

# APPENDIX: ITT'S OBJECTIONS TO PLAINTIFF'S EVIDENCE

| Plaintiff's Evidence | Basis for Objection |
|---|---|
| Roberts Dep. 57:8-11, 13-14, 17-18 | Hearsay |
| Roberts Dep. 58:2-3 | Hearsay |
| Roberts Dep. 59:1, 3-4 | Hearsay |
| Roberts Dep. 59:13-15 | Relevance, lack of foundation, speculation |
| Roberts Dep. 59:19-21 | Hearsay, relevance, lack of foundation, speculation |
| Roberts Dep. 79:22-80:7 | Lack of foundation, speculation, hearsay |
| Roberts Dep. 123:10-124:6 | Hearsay |
| Roberts Dep. 125:3 | Hearsay |
| Roberts Dep. 125:8-126:20 | Hearsay |
| Roberts Dep. 126:23-127:3 | Hearsay |
| Roberts Dep. 127:8-11 | Hearsay |
| Roberts Dep. 127:23-24 | Hearsay |
| Roberts Dep. 128:1, 15-25 | Hearsay |
| Roberts Dep. 129:7, 9 | Hearsay |
| Roberts Dep. 130:14-131:10 | Hearsay |
| Roberts Dep. 131:25 | Hearsay |
| Roberts Dep. 132:3-7 | Hearsay |
| Roberts Dep. 133:18-20 | Hearsay |
| Roberts Dep. 134:10-16 | Hearsay |
| Roberts Dep. 135:21 | Hearsay |
| Roberts Dep. 138:2-12 | Hearsay |
| Roberts Dep. 139:10-140:5 | Hearsay, lack of foundation, speculation |
| Roberts Dep. 140:7-8 | Hearsay |
| Roberts Dep. 140:13-141:1 | Hearsay, lack of foundation, speculation |
| Roberts Dep. 149:20 | Hearsay |
| Roberts Dep. 149:22-150-7 | Hearsay |
| Thompson Dep. 45:19-46:11 | Relevance, hearsay, speculation, lack of foundation |
| Thompson Dep. 46:13-47:21 | Relevance, hearsay, speculation, lack of foundation |
| Thompson Dep. 48:1 | Relevance |
| Thompson Dep. 48:3-12 | Hearsay |
| Thompson Dep. 48:14-15 | Lack of foundation, speculation |
| Thompson Dep. 51:9 | Relevance, speculation, lack of foundation |
| Thompson Dep. 51:12 | Relevance |
| Thompson Dep. 120:24-122:16 | Hearsay, relevance, lack of foundation, speculation |
| Thompson Dep. 122:19-123:13 | Hearsay, relevance, lack of foundation, speculation |
| Thompson Dep. 124:4-8 | Hearsay, relevance, lack of foundation, speculation |
| Thompson Dep. 124:11-12 | Hearsay, relevance, lack of foundation, speculation |
| Thompson Dep. 125:2-10 | Relevance, lack of foundation, speculation |
| Thompson Dep. 125:17-126:1 | Relevance, lack of foundation, speculation |

## APPENDIX: ITT'S OBJECTIONS TO PLAINTIFF'S EVIDENCE

| *Plaintiff's Evidence* | *Basis for Objection* |
|---|---|
| Thompson Dep. 126:4-16 | Relevance, lack of foundation, speculation |
| Thompson Dep. 127:13-22 | Relevance, lack of foundation, speculation, |
| Thompson Dep. 127:25-128:1 | Hearsay, lack of foundation, speculation |
| Thompson Dep. 128:15-129:3 | Hearsay, lack of foundation, speculation |
| Thompson Dep. 129:12-22 | Hearsay, lack of foundation, speculation, best evidence |
| Thompson Dep. 130:14-17 | Hearsay, lack of foundation, speculation |
| Thompson Dep. 131:2-18 | Hearsay, lack of foundation, speculation, best evidence |
| Thompson Dep. 132:6-20 | Hearsay, lack of foundation, speculation, best evidence |
| Thompson Dep. 133:6-9 | Hearsay, lack of foundation, speculation |
| Thompson Dep. 133:13-134:3 | Hearsay, lack of foundation, speculation, relevance |
| Thompson Dep. 134:18-135:12 | Hearsay, lack of foundation, speculation, relevance |
| Thompson Dep. 135:15-20 | Hearsay, lack of foundation, speculation |
| Thompson Dep. 136:2-16 | Hearsay, lack of foundation, speculation |
| Thompson Dep. 137:20-138:1 | Hearsay, lack of foundation, speculation |
| Thompson Dep. 140:14-16 | Hearsay, hearsay, lack of foundation, speculation |
| Thompson Dep. 140:18-141:4 | Hearsay, lack of foundation, speculation |
| Thompson Dep. 141:10-16 | Lack of foundation, speculation |
| Thompson Dep. 143:20-24 | Lack of foundation, speculation |
| Thompson Dep. 144:4-11 | Lack of foundation, speculation |
| Thompson Dep. 145:11-15 | Hearsay |
| Thompson Dep. 145:21-147:5 | Lack of foundation, speculation, hearsay |

101086950_1.DOC

101082136_3.docx