UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JASON HALASA, | ) |
| | ) |
|   Plaintiff, | ) |
| | ) |
|     vs. | )   CAUSE NO. 1:10-cv-437-WTL-MJD |
| | ) |
| ITT EDUCATIONAL SERVICES, INC., | ) |
| | ) |
|   Defendant. | ) |

## ORDER REGARDING BILL OF COSTS

Following the trial of this case, prevailing party ITT Educational Services ("ITT") filed a timely Bill of Costs pursuant to 28 U.S.C. § 1920 seeking costs in the amount of $62,589.70. Plaintiff Jason Halasa has filed an objection to the Bill of Costs,[1] asking the Court to deny it in its entirety or, alternatively, reduce it for a variety of reasons. ITT has filed a reply in support of its Bill of Costs. The Court, being duly advised, rules as follows.

### I. APPLICABLE STANDARD

Federal Rule of Civil Procedure 54(d) provides that "unless a federal statute, these rules, or a court order provides otherwise, costs–other than attorney's fees–should be allowed to the prevailing party." The categories of costs that may be awarded are limited to those enumerated by statute:

    (1)    Fees of the clerk and marshal;
    (2)    Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
    (3)    Fees and disbursements for printing and witnesses;

---

[1]The Court notes ITT's objection that Halasa's objection was filed prematurely because it was filed before the clerk had taxed costs. Federal Rule of Civil Procedure 54(d)(1) does, as ITT notes, provide that the clerk may tax costs "on 14 days' notice" and then "[o]n motion served within the next 7 days, the court may review the clerk's action." However, the Court does not believe that the rule forecloses what occurred here–an objection to the bill of costs being filed within the 14-day notice period–which is actually more efficient for all involved.

> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. "[T]here is a heavy presumption in favor of awarding costs to the prevailing party." *Majeske v. City of Chicago*, 218 F.3d 816, 824 (7th Cir. 2000).[2] "Taxing costs against a losing party requires two inquiries: (1) whether the cost imposed on the losing party is recoverable and (2) if so, whether the amount assessed for that item was reasonable." *Id.* The "party seeking an award of costs carries the burden of showing that the requested costs were necessarily incurred and reasonable." *Trustees of Chicago Plastering Inst. Pension Trust v. Cork Plastering Co.,* 570 F.3d 890, 906 (7th Cir. 2009).

## II. HALASA'S OBJECTIONS

Halasa objects to several categories of costs sought by ITT. Each objection is addressed, in turn, below.

As an initial matter, the Court rejects Halasa's argument that ITT should bear its own costs in this case because it was brought under the False Claims Act and "[a]warding costs will violate the purpose of the False Claims Act's protection against retaliatory action and will deter wrongfully discharged employees from bringing suits to hold corporations accountable, chilling civil rights enforcement in the employment arena." Halasa Brief at 16. Halasa has not cited to

---

[2]Halasa incorrectly cites *Treat v. Tom Kelley Buick Pontiac GMC, Inc.*, 2010 WL 3672230 (N.D. Ind. 2010), for the proposition that "[i]n deciding whether to award costs, this Court may consider the total amount of requested costs, the good faith of the losing party, and the closeness and difficulty of the issues raised by the case." Halasa Response at 3. As that case makes clear, those factors are relevant when a court is deciding whether to absolve the losing party from paying costs because of the party's indigence. Halasa is not indigent, and therefore the "heavy presumption" that an award of costs are appropriate applies.

2

any authority that supports his argument, and no wonder:  It is up to Congress to make those types of policy decisions, and Congress has not chosen to exempt False Claims Act cases from the general presumption that an award of costs to the prevailing party is appropriate.

### A.  Fees for Witnesses

Halasa advances two objections to the $3,750.30 for witness fees included in ITT's bill of costs.  First, he asserts that "ITT provides no invoices or other documentation for the witness fees, with one exception."  This is incorrect; ITT did, in fact, include invoices for each of the witness fees at issue.  That said, however, the Court finds that the fees relating to the subpoenas issued to the following are not compensable as witness fees because the subpoenas were for the production of documents, not depositions, and therefore do not relate to "witnesses":  College Living Experiences ($52.80); West Coast College ($52.80); Mission College ($16.50); Advanced Computing Institute ($52.80); and Mark S. Laska ($16.50).  Accordingly, the Court will reduce the amount awarded for witness fees by $191.40.

Halasa also argues that ITT may not recover expert witness Gerald Lynch's fee for deposition preparation, travel to and from his deposition, and time spent reviewing his deposition transcript; rather, he argues, ITT may recover only the $40.00 witness fee provided for in 28 U.S.C. § 1821.  That argument is correct in theory, but irrelevant as a practical matter.  Federal Rule of Civil Procedure 26(b)(4)(E)(i) provides that the party who deposes an expert witness–which in this case was Halasa–shall "pay the expert a reasonable fee for time spent." The fact that ITT did not request that Halasa pay this fee until it filed its bill of costs does not bar its recovery.  *See Chambers v. Ingram*, 858 F.2d 351, 360-61 (7th Cir. 1988).  Accordingly, ITT is entitled to recover what it paid Dr. Lynch for fees relating to his deposition as long as those fees are reasonable.  The Court finds that the $2,975.00 charged by Dr. Lynch in this case was

reasonable, and therefore is recoverable pursuant to Federal Rule of Civil Procedure 26(b)(4)(E)(i).

### B. Transcript Costs

ITT's bill of costs includes $32,590.08 for deposition costs. In response to Halasa's objection, ITT has reduced that request by $5,317.00, conceding that it is not entitled to recover amounts it paid for rough transcripts and "real-time" reporting, which was for the convenience of counsel. Therefore, ITT now requests $27,273.08 for deposition costs.

Halasa argues that ITT may not recover any of its deposition costs because it "fail[ed] to provide any statement regarding the necessity of the depositions." Halasa Brief at 6. In fact, the Bill of Costs form used by ITT (and preferred by the Court), AO Form 133, requires counsel to certify under penalty of perjury that the costs listed are "correct and were necessarily incurred in this action." The opposing party, of course, has the opportunity to dispute the necessity of a particular item, but Halasa does not argue that any of the depositions *actually* were not reasonably necessary, but only that ITT has not *demonstrated* their reasonableness. In the absence of any suggestion that a particular deposition transcript purchase was unreasonable, the Court declines to require ITT to do more than complete the declaration required by the form and provide the relevant invoices, which it has done.

Halasa does make several specific arguments regarding the reasonableness of the cost of certain transcripts. First, citing *Thomas v. Newton*, 2009 U.S. Dist. LEXIS 54253, *11–13 (E.D. Mo. 2009), he argues that ITT may not recover for both the cost of taking his videotaped deposition and the cost of the printed transcript of his deposition. The Seventh Circuit expressly held in *Little v. Mitsubishi Motors N.A., Inc.*, 514 F.3d 699 (7th Cir. 2008), that a party could recover for both the cost of video-recorded deposition and the cost of stenographically

transcribing the same deposition, as long as both were reasonable and necessary. At the time of that decision, 28 U.S.C. § 1920(2) provided for the taxation of costs for "[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case"; therefore, the plain language of the statute seemed to limit recoverable deposition costs to that of a stenographic transcript. However, as the *Little* court noted, the Seventh Circuit had previously read § 1920(2) in conjunction with Federal Rule of Civil Procedure 30(b)(4) to permit "costs associated with the taking of depositions" which, the court held, could include a videotaped deposition instead of a stenographic transcript. *Little*, 514 F.3d at 701 (citing *Barber v. Ruth*, 7 F.3d 636, 645 (7th Cir.1993) and *Commercial Credit Equip. Corp. v. Stamps*, 920 F.2d 1361, 1368 (7th Cir.1990)). And in *Little*, the court held that an amendment to Rule 30(b)(4)– which had become Rule 30(b)(3)–meant that costs could be taxed for both taking a videotaped deposition and having it stenographically transcribed.

In October 2008, § 1920(2) was amended to provide for "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." As Halasa notes, the court in *Thomas* held that the use of the disjunctive in the statute means that a party may recover for either a printed or an electronically recorded transcript, but not both. In light of the Seventh Circuit's broad reading of the previous version § 1920(2), as informed by Rule 30(b)(3), the Court does not believe that the use of the word "or" in the amended § 1920(2) can be given the import urged by Halasa. In other words, inasmuch as the Seventh Circuit did not read § 1920(2) literally before, the Court does not believe a literal reading is warranted now. And in any event, if the new language were read strictly literally, the result would be that costs could be awarded for "printed . . . transcripts necessarily obtained for use in the case" *or* "electronically recorded transcripts necessarily obtained for use in the case"; costs could not be awarded for the printed

5

transcripts of some depositions and the electronically recorded transcripts of other depositions taken in the same case. That result, of course, is nonsensical.

However, while the Court finds that costs for both video and printed transcripts of a deposition can be recovered pursuant to § 1920(2), as with any costs they must have been reasonably necessary to the preparation of the Defendant's case in order to be recoverable. It was certainly necessary for the Defendant to have a printed transcript of Halasa's deposition. However, the Court finds that it was not reasonably necessary for the Defendant to have it in video form. There was no risk that Halasa would be unavailable to testify at trial, and the Defendant's expressed reason for "needing" the video–that it "captured Halasa's demeanor, facial expressions, and body language, which ITT intended to use to contrast his in court appearance and to impeach his credibility at trial"–demonstrates that there was a strategic reason for defense counsel to want the video, but does not make the video "reasonably necessary" to the Defendant's case. Rather, having the video was a luxury, perhaps providing an additional arrow in defense counsel's quiver, but it is appropriate for ITT, not Halasa, to pay for that arrow. Accordingly, the Court will reduce the requested award by $4,056.50, the cost of the video version of Halasa's deposition.

Finally, Halasa argues that the Court should limit the amount recovered for deposition transcripts to the rate established by the Judicial Conference of the United States, currently $3.65 per page for an original and $0.90 per page for a copy.[3] While in some instances courts have found the Judicial Conference rate to be the appropriate reasonable rate for the purpose of taxing costs, there is no rule in this district that establishes the Judicial Conference rate as the maximum

---

[3] The Court notes that the current rate for transcripts of court proceedings established in the Central District of California, where the depositions in question in this case were taken, is $4.38 per page for the original and $.90 per page for the first copy.

taxable rate. *Cf.* Northern District of Illinois Local Rule 54.1(b) ("If in taxing costs the clerk finds that a transcript or deposition was necessarily obtained, the costs of the transcript or deposition shall not exceed the regular copy rate as established by the Judicial Conference of the United States and in effect at the time the transcript or deposition was filed unless some other rate was previously provided for by order of court. Except as otherwise ordered by the court, only the cost of the original of such transcript or deposition together with the cost of one copy each where needed by counsel and, for depositions, the copy provided to the court shall be allowed.").

In this case, the Court finds that ITT is entitled to recover the actual cost of its deposition transcripts, even though the rate per page exceeds the Judicial Conference rate. First, almost half of the depositions in question were noticed by Halasa, not ITT. ITT, therefore, simply paid the price per page charged by the court reporter that was chosen by Halasa, a rate that Halasa presumably believed to be reasonable at the time. ITT used the same reporting firm–Karyn Abbott & Associates–for all of the depositions it noticed, and Halasa himself used Karyn Abbott & Associates for two depositions that he took. That reporting firm charged $5.80 per page for all but two depositions; the exceptions were the depositions of a medical doctor and of Halasa. ITT explains that it is the firm's standard practice to charge a premium rate of $6.00 per page for the depositions of medical doctors; the Court presumes that the court reporters typically spend extra time preparing the transcripts of those depositions because they involve unfamiliar medical terms. With regard to Halasa's deposition, the court reporting firm explained that it charged the premium rate "because of [Halasa's] nonstop, page-long answers, not to mention his accent. His long-winded answers made the deposition extra difficult to report." There is no indication that it is the reporting firm's standard practice to charge the premium rate in such cases, and the Court is not aware that it is standard practice in the industry. Accordingly, the Court will discount the

7

amount of recoverable costs for Halasa's deposition transcript to reflect a rate of $5.80 per page (a discount of $134.60).

The Court finds that the remainder of costs for deposition transcripts requested by ITT in its reply brief are reasonable and recoverable. Accordingly, ITT is entitled to $23,081.98 for deposition costs.

### C. Fees for Exemplification and Copying Costs

ITT's bill of costs includes $5,248.33 for its counsel's law firm's in-house duplication charges. Halasa argues that ITT has failed to provide sufficient information regarding what was copied to permit the Court to determine whether the copies were reasonably necessary for this litigation. In response, ITT submits the affidavit of Elizabeth Watson, who avers the following: (1) the copies were billed at $.10 per page; (2) the records provided–which simply give the date, the number of pages, and a case identifier–are the best records available; and (3) that over 47,000 documents were produced and over 3500 pages filed in this case. The Court finds that this information, coupled with counsel's certification on the bill of costs form and the fact that the copy charges do not strike the Court as extraordinary given the nature of the case, is sufficient to support ITT's request. *See Northbrook Excess and Surplus Ins. Co. v. Procter & Gamble Co.,* 924 F.2d 633, 643 (7th Cir. 1991), (party is "not required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs" but rather is "required to provide the best breakdown obtainable from retained records"). The Court further finds that the $146.83 requested by ITT for copies of documents obtained via third-party subpoenas is reasonable.

Halasa also objects to the $1702.57 ITT seeks for "costs associated with concordance database to facilitate e-discovery production." The parties cite two cases that are instructive on

8

the issue of whether and under what circumstances costs associated with computer programs designed to aid in electronic discovery are taxable. First, in *Northbrook Excess*, 924 F.2d at 644, the court held that simply because a computer program reduces the time and costs associated with reviewing documents does not make it a taxable cost under § 1920. On the other hand, costs associated with "converting computer data into a readable format in response to plaintiffs' discovery requests" are recoverable under § 1920 per *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009). In this case, ITT argues that its use of the database permitted counsel "to efficiently upload, review, convert, and produce the electronic files" requested by Halasa.[4] This is essentially the same argument that the court in *Northbrook Excess* found to be insufficient. The Court simply does not have enough information to determine whether the database's utility was primarily related to counsel's review and selection process, which is not included in § 1920, or to the converting and producing of the documents which, as a replacement for photocopying, would be compensable. Accordingly, given the record before it, the Court will exclude the costs associated with the database from the award of costs.

### D. Fees for Service of Summons and Subpoena

ITT seeks $19,151.59 for fees for service of process. ITT cites *Nilssen v. Osram Sylvania, Inc.*, 2007 WL 257711 (N.D. Ill. 2007), for the proposition that "[f]ees for private process servers are recoverable under Section 1920." ITT Reply at 17. What ITT fails to acknowledge is that both *Nilssen* and the Seventh Circuit case on which it relies, *Collins v. Gorman*, 96 F.3d 1057,

---

[4] ITT suggests that its costs related to electronic discovery were incurred, at least in part, because Halasa's requests for electronically stored documents were unduly broad. The Court notes that Federal Rule of Civil Procedure 26(b)(c)(B) provides a mechanism for resolving that type of discovery issue, and pursuant to that rule a court may "specify conditions for the discovery" of electronically store information which would, of course, include ordering the requesting party to pay (or share the cost of) the type of database system that was used here.

1060 (7th Cir. 1996), support Halasa's argument that the amount of costs awarded for process server fees cannot exceed what the cost would have been had the U.S. Marshals Service effected service of process. The reason for that rule is simple: § 1920 does not authorize recovery of fees for service of process, but rather it authorizes recovery of "[f]ees of the marshal." In *Collins*, the Seventh Circuit recognized that the U.S. Marshals Service no longer provides service of process as a matter of course, and held that a prevailing party therefore may "recover service costs that do not exceed the marshal's fees, no matter who actually effected service." *Collins*, 96 F.3d at 1060.

The amount the U.S. Marshals Service may charge for effecting service of process is set forth in the following regulation, which has been in effect throughout the course of this litigation:

> For process served or executed personally–$55 per hour (or portion thereof) for each item served by one U.S. Marshals Service employee, agent, or contractor, plus travel costs and any other out-of-pocket expenses. For each additional U.S. Marshals Service employee, agent, or contractor who is needed to serve process--$55 per person per hour for each item served, plus travel costs and any other out-of-pocket expenses.

28 C.F.R. § 0.114(a)(3). ITT, like the defendant in *Nilssen*, has not provided sufficient information to determine how much the marshal's fee would have been for each of its invoices. The main problem is that the private process server does not charge by the hour, while the U.S. Marshals Service does. The Court, like the *Nilssen* court, finds that in the absence of information regarding the number of hours spent, travel costs, and other out-of-pocket expenses, ITT is entitled to recover the actual cost or $55 for each subpoena served, whichever is less. By the Court's count, there were 63 subpoenas served for which ITT is entitled to recover $55 each, 16 subpoenas at $52.50, and one at $35, for a total of $4,340.00.

Halasa's argument that ITT should not recover for subpoenas it served seeking

"information regarding Halasa's job search and potential salary in an attempt to counter or reduce his damages" because "the information ITT likely would have received would have been duplicative of Halasa's discovery responses and testimony" and therefore "ITT was seeking information it already possessed in other documents," Halasa Brief at 51, is without merit. It was not unreasonable for ITT to seek such documents from third parties in order to verify the information it had received from Halasa himself.

### III. CONCLUSION

For the reasons set forth below, ITT is entitled to the following costs pursuant to 28 U.S.C. § 1920:

| | |
|---|---|
| Fees for service of summons and subpoena: | $ 4,340.00 |
| Fees for transcripts: | $23,081.98 |
| Fees for witnesses: | $   583.90 |
| Fees for copies: | $ 5,395.16 |
| TOTAL: | $33,401.04 |

Accordingly, costs are taxed in the amount of $33,401.04, which hereby is included in the judgment. In addition, pursuant to Federal Rule of Civil Procedure 26(b)(4)(E)(i), Halasa shall pay ITT $2,975.00 to reimburse it for expenses relating to Dr. Lynch's deposition.

SO ORDERED: 02/27/2012

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification